## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

EDWARD GEORGE PALMER, #360-069     \*

Petitioner     \*

v     \*     Civil Action No. PX-17-2958

WARDEN and     \*
THE ATTORNEY GENERAL OF THE
STATE OF MARYLAND,     \*

Respondents     \*
     \*\*\*

## <u>MEMORANDUM OPINION</u>

In this Petition for a Writ of Habeas Corpus filed pursuant to 28 U.S.C § 2254, Edward George Palmer challenges his 2009 conviction in the Circuit Court for Baltimore City for second degree murder and openly carrying a dangerous weapon.  Respondents argue that Palmer's claims are not cognizable and otherwise fail to meet the standard for federal habeas relief.   Palmer was provided an opportunity to respond to these arguments but has not done so.  After considering the parties' submissions, the Court has determined that no hearing is necessary.  *See* Loc. R. 105.6; see also Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts; *Fisher v. Lee,* 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)).  For the following reasons, the Court denies the Petition and declines to issue a certificate of appealability.

### I.    Background

In September 2009, Palmer was tried in Baltimore City Circuit Court for the murder of James Daniels whose burnt body had been discovered at a construction site.  At trial, James Harring, an acquaintance of Palmer's, testified that Palmer came to his house in the early

morning of July 21, 2008 and admitted that "he had killed someone."  Palmer also wanted to know the location of "the industrial park" in the area.  Harring testified that Palmer did not ask for his assistance or say why he needed this information.  Harring also testified that he had seen Palmer's wife sitting in the front passenger seat of a black car parked nearby, but saw nothing in the back seat.  Trial Trans. September 23, 2009.  ECF No. 17-3 at 20, 23, 25.

The State then moved for the admission of Harring's prior recorded statement and over defense counsel's objection.  *Id.* at 3-34, 38-39, 41-56.  After the recording was played,  Harring conceded that he in fact had seen something "from a distance" in the back seat of Palmer's car, even though he denied that the "something" was a body.  Harring confirmed that he "couldn't make out what it was, but it looked like somethin', like a blanket or something,'" *Id.* at 63-64.  Harring also admitted that he had seen blood on Palmer's shoes, that Palmer appeared upset, and that he (Harring) believed Palmer to be asking for help in disposing of a body.  Harring also confirmed that later in the day, Palmer admitted to having "got[ten] rid of the body."  *Id.* at 63-64, 81.

Brian Daniels, the victim's nephew who had been incarcerated at the time of trial, also testified that Palmer admitted to him that Palmer stabbed James Daniels in the neck during an argument about rent money.  Brian Daniels confirmed that Palmer shared he had asked a friend for help in disposing the body, but the friend refused, so Palmer took the body to a park and burned it.  Brian further believed that Palmer was unaware at the time of their conversation that Brian was James Daniels' nephew.  Trial Trans. Sept. 23, 2009.  ECF No. 17-3 at 241-247.

Irene Johnson, Palmer's sister-in-law and an eyewitness to the fight between Daniels and Palmer, also testified at trial.  Johnson, who is deaf and mute, required assistance from two sign language interpreters.  Through an interpreter, Johnson testified that Palmer and Daniels had been

in Palmer's home, but that a third man stabbed Daniels. Trial Trans. September 29, 2009. ECF No. 17-6 at 8, 11-21.[2]

Medical Examiner, Carol Allen, testified as to the condition of the victim's body. She described the multiple stab wounds to the shoulder and neck well as bruising caused by blunt force trauma and that the body had been burned after Daniels died.[3] Allen identified the cause of death as a stab wound to the upper back. A DNA analyst testified that testing on blood samples taken from Palmer's shoes and home matched Daniels' DNA. Trial Trans. Sept. 24, 2009. ECF No. 17-4 at 24, 32-33.

On September 30, 2009, a jury in the Circuit Court for Baltimore City returned guilty verdicts against Palmer for second degree murder and openly carrying a dangerous weapon. For the second degree murder charge, Palmer was sentenced to 30 years' incarceration and three years for the weapons offense to run consecutively. ECF No. 17-1 at 1-2; ECF No. 17-11 at 2. On November 19, 2009, the Circuit Court denied Palmer's motion for a new trial and Palmer's motion for modification of the sentence. *Id.* at 8. ECF No. 17-10 at 3; ECF No. 17-11 at 2.

Palmer appealed his convictions to the Court of Special appeals, asserting several trial errors. Specifically, Palmer challenged the admission of Harring's out-of-court statements, the jury instruction on aiding and abetting, and the admission of photographs showing the condition of Daniel's body when discovered. Palmer also generally challenged the convictions as based on insufficient evidence. ECF No. 17-9 at 2. On September 26, 2011, the Court of Special Appeals of Maryland affirmed the judgment in a written opinion. ECF No. 1 at 5, ECF No. 17-9. On

---

[2] Johnson also testified that she did not witness the stabbing because she was asleep. ECF No. 17-6 at 18. Johnson's recorded interview with lead Detective, Jonathan Jones, had also been admitted into evidence through the expert sign language interpreter who had been present at the time. Trial Trans. Sept. 28, 2009. ECF No. 17-5 at 13, 18-21, 24, 30-36, 61, 64-113.

[3] Charles Mast, a certified fire investigator, testified to his examination of the crime scene. Mast smelled gasoline when he first approached the body, the fire had been contained, and he found no evidence of accidental ignition. Mast concluded that the fire had been set intentionally. Trial Trans. Sept. 22, 2009. ECF No. 17-2 at 93-14.

January 23, 2012, the Court of Appeals of Maryland denied Palmer's petition for a writ of certiorari. *Palmer v. State*, 35 A.3d 293 (Md. 2012).

On August 20, 2012, Palmer petitioned for post-conviction relief. Palmer asserted an array of grounds supporting his contention that he had been wrongly convicted and that trial counsel provided ineffective assistance. ECF No. 17-10. The Court addressed each ground separately, and granted only Palmer's request to file a belated motion for modification of sentence, but otherwise denied relief. ECF No. 17-10; ECF No. 17-11 at 3. Palmer filed an application for leave to appeal the denial of post-conviction relief, which the Court of Special Appeals summarily denied on March 13, 2017. ECF No. 17-11. Palmer next filed a Motion for Modification of Sentence pursuant to Md. Rule 4-345 on January 12, 2018, which the Circuit Court denied on April 13, 2018. ECF No. 17-1 at 14.

Palmer filed this Petition on October 5, 2017, which he supplemented on December 11, 2017. ECF No. 9. The Petition is now ripe and ready for review. For the following reasons, it must be denied.

## II.    Standard of Review

A petition for a writ of habeas corpus may address only violations of the Constitution or laws of the United States that occurred in the state proceedings. 28 U.S.C. § 2254(a). In reviewing a state habeas petition, this Court must give "considerable deference to the state court decision," and may not grant habeas relief unless the state court arrived at a "'decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or 'a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Nicolas v. Att'y Gen. of Md.*, 820 F.3d 124, 129 (4th Cir. 2016) (quoting 28 U.S.C. § 2254(d)). The Court

"must presume that the state court's factual findings are correct unless the petitioner rebuts those facts by clear and convincing evidence," and "cannot disturb the state court's ruling simply because it is incorrect; it must also be unreasonable." *Id.*

A state court's decision is contrary to established federal law when the court arrived at a conclusion at odds with the United States Supreme Court on a question of law or confronted facts that are "materially indistinguishable from a relevant Supreme Court" case but nevertheless arrived at the opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see Lovitt v. True*, 403 F.3d 171, 178 (4th Cir. 2005); *Barnes v. Joyner*, 751 F.3d 229, 238 (4th Cir. 2014). Importantly, a federal court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Lovitt*, 403 F.3d at 178 (quoting *Williams*, 529 U.S. at 411). Rather, the petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Barnes*, 751 F.3d at 238 (quoting *White v. Woodall*, 572 U.S. 415, 419–20 (2014)).

## III.      Discussion

In his Petition, Palmer asserts four grounds for federal habeas relief: (1) the trial court erred in admitting the out of court statements of James Harring to the police; (2) the trial court erred in instructing the jury on aiding and abetting; (3) the evidence was insufficient to sustain his convictions; and (4) trial counsel was ineffective for failing to present an adequate defense. ECF No. 1 at ECF No. 9 at 5. The Court first considers the claims of error committed during the trial, then turns to the sufficiency of the evidence and ineffectiveness claims.

### A. Errors at Trial

Palmer challenges the trial court's decision to admit Harring's out-of-court statement pursuant to Maryland Rule 5-802.[1] ECF No. 1 at 7-9; ECF No. 9-1 at 7. Palmer also argues that the trial court misapplied Maryland law when it instructed the jury on aiding and abetting. ECF No. 1 at 11-14. As to these claims, Palmer challenges the misapplication of state procedural law, as he did in on direct appeal. ECF Nos. 17-8; 17-9; ECF No. 9-1. Because both challenges are aimed at state procedural rules, and not violations of the Constitution or federal law, this Court is without power to consider them. *See Wilson v. Corcoran*, 562 U.S. 1, 1 (2010); *Larry v. Branker*, 552 F.3d 356, 368 (4th Cir. 2009) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." (quoting *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)). *See also Spencer v. Murray*, 18 F.3d 237, 239 n. 5 (4th Cir. 1994); *Coleman v. Thompson,* 501 U.S. 722, 729 (1991) ("This Court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."). Accordingly, these claims provide no basis to award federal habeas corpus relief.

### B. Insufficient Evidence

Palmer also argues that the evidence presented at trial was insufficient to sustain his convictions. The Court of Special Appeals rejected the same claim on direct appeal. It reasoned:

> Upon reviewing the record as a whole, we conclude that the evidence is sufficient to establish appellant's guilt beyond a reasonable doubt. Although appellant claims that the evidence does no more than "link [appellant] to the disposal of Mr. Daniel's body[,]" the jury was free to accept or reject the testimony of James Harring and Brian Daniels, each of whom implicated appellant in the killing. Although appellant seizes on the testimony of Irene Johnson, who implicated an unknown man in the murder, the credibility of her testimony is likewise a factor to be evaluated by the jury.

ECF 17- 9 at 21.  The Court of Special Appeals characterized Palmer's contention as a challenge to the credibility of certain witnesses, an argument "wasted on an appellate court."  *Id*. at 22.  This is so, reasoned the Court of Special Appeals, because credibility determinations are solely within the province of the jury.  *Id.* at 22.

Palmer offers no justification for this Court to revisit the Court of Special Appeals' determination in this regard.  Again, Palmer does not argue, nor can he, that the Court of Appeals decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)).

 Moreover, the Court must presume that factual findings are correct unless the Petitioner presents clear and convincing evidence to the contrary.  *Id*. at § 2254(e)1).  Palmer has not met this heavy burden. The trial record supports, rather than undermines, the Court of Special Appeals' determination.  For example, the evidence reflects that Palmer admitted to more than one witness he had killed a man.  To Brian Daniels, the victim's nephew, Palmer directly affirmed that he had stabbed and killed James Daniels and then burned his body. DNA evidence also confirmed that the victim's blood on had been on Palmer's shoes and in his home.  On this record, the Court must defer to the previous state Court determination that his conviction was based on sufficient evidence.  The Petition is denied as to this claim.

### C.  Ineffective Assistance of Counsel

Palmer's last claim fares no better.  Although he has raised a proper constitutional challenge in asserting that trial counsel was constitutionally ineffective, this Court finds no basis

to upset the prior state court conclusion that Palmer's counsel afforded him adequate representation.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The "right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771, n.14 (1970)). When reviewing counsel's performance in a state criminal proceeding, a petitioner must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S.at 105 (citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard*." Id.*

To demonstrate constitutionally ineffective representation, the petitioner must show both that counsel's performance was deficient, and that such performance prejudiced his defense. *Strickland*, 466 U.S. at 687.  As to deficient performance, petitioner must show that counsel's representation fell below the "range of competence normally demanded of attorneys in criminal cases." *Id.* at 687-88 (citation omitted).  If counsel erred, the Court next considers whether the petitioner was prejudiced by the error.  As to prejudice, a petitioner must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different. *Id*. at 691–94.  The Court need not assess the attorney's performance if clearly no prejudice resulted from the claimed deficiencies.  *Id.* at 697.

Palmer challenges trial counsel's performance for eight separate reasons.  He claims that counsel was ineffective for: (1) failing to investigate the case adequately, (2) misadvising him not to testify in the case, (3) failing to object to the admission hearsay testimony, (4) failing to address the issue of sleeping jurors, (5) failing to object to the aiding and abetting instruction, (6) failing to litigate a motion for new trial adequately, (7) failing to request his motion for sentence modification to be held in abeyance; and (8) the cumulative effect of these errors.  ECF No. 10.  The state post-conviction court considered and denied each claim.  This Court reviews each as well.

### 1.  Failure to Investigate

 At the post-conviction stage, Palmer argued that trial counsel had been aware of additional witnesses who had been present at the time of the altercation but made no effort to find or interview them.  From this, Palmer argues that these unidentified additional witnesses would have given the jury reason to doubt his culpability.  ECF No. 17-10 at 5.  But because Palmer failed to present any specific evidence as to the identities of such witnesses, or their availability to testify, or any inkling of what they would have said, Palmer failed to establish that he had been prejudiced by counsel's alleged failings.  ECF No. 17-10 at 6.  Here, too, Palmer has provided no evidence on which this Court could upset the prior determination.  ECF No.1 at 15; No. 9-1 at 5.  Accordingly, this Palmer's petition on this claim must fail.

### 2.  Advice to Petitioner not to Testify

Palmer next argues that counsel erred in advising him not to testify at trial so as to avoid cross-examination about his prior criminal convictions.  Before the post-conviction court, Palmer maintained that his testimony was the only way that he could convince the jury to acquit him in

light of the evidence against him.  ECF No. 17-10 at 6-7.  The post-conviction court , rejecting this

contention, reasoned:

> The Supreme Court has held that the decision whether to testify belongs to the
> defendant and may not be made for him by defense counsel.  *Brown v. Artuz*, 124
> F.3d 73 (2d Cir. 1997).  While it is unclear in this case that trial counsel advised
> Petitioner not to testify, it is not evident that Petitioner was coerced into the
> decision.  Unless Petitioner did not understand the nature of counsel's advice or if
> the advice was ambiguous, then Petitioner's prior decision at trial is final and
> cannot be analyzed in hindsight.  Even if the Court does find trial counsel's advice
> ambiguous, the Court will not find prejudice-because there is not a reasonable
> probability that Petitioner-with his long criminal history- could have persuaded the
> jury to acquit him.

ECF No. 17-10 at 6-7.

Palmer has given this Court no grounds to second guess this determination. ECF No. 1,

ECF No. 9-1.  Indeed, the record amply supports the decision.  Accordingly, the Court finds habeas

relief unwarranted based on trial counsel's advisement.

### 3. Failure to Object to Hearsay

At trial, an officer testified about the substance of the tip that led to considering Palmer as

a suspect.  ECF No. 17-10 at 8; *see also* Trial Trans. September 23, 2009, ECF No. 17-3 at 9-11.

Trial counsel did not object to the question initially.  *Id.*  But counsel *did* object when the

prosecutor asked, "what did [the tipster] say to you?"  *Id.* at 10.  Palmer finds fault, as he did at

the post-conviction stage, with the timing of trial counsel's objection.

The post-conviction court aptly noted that interposing an objection often involves questions

of strategy.  *See, e.g., Lungren v. Mitchell,* 440 F.3d 754, 774 (6th Cir. 2006).  Thus, "any failure

to object usually cannot be said to have been error unless the evidence sought is so prejudicial to

a client that failure to object essentially defaults the case to the State."  ECF No. 17-10 at 8.  Trial

counsel's objection constituted sound trial strategy.  Alternatively, the post-conviction court

determined that even assuming the failure to object amounted to ineffective assistance of counsel,

Palmer had not shown he suffered prejudice from the alleged error. *Id.* Again, Palmer has not demonstrated that the state court erred in its determination or that prejudice resulted from any claimed error. This ground fails as well.

### 4. Failure to Address Sleeping Juror

Palmer argues that at least one juror may have been sleeping during trial and his counsel failed to alert the court or ask for the juror to be replaced. ECF No. 1-9 at 6. The post-conviction court first determined that there was no evidence a juror had fallen asleep, and that even if such evidence did reflect a juror having "nod[ded] off," Palmer has not shown that the said juror did not perform his or her duties adequately. ECF No. 17-10 at 9. In this Petition, Palmer has presented no evidence to upset the factual findings of the state court. Nothing before this Court demonstrates that a juror indeed fell asleep, and certainly to the point that Palmer can show prejudice in his counsel's failure to seek a replacement juror. This Court, therefore, cannot accord Palmer his requested relief on this ground.

### 5. Failure to Renew Objection to Aiding and Abetting Instructions

Palmer next argues that trial counsel should have objected to the court's aiding and abetting instruction, and separately, that this failure resulted in Palmer's waiver of the argument on appeal. To be sure, the post-conviction correctly noted that counsel did not renew any objection to the charge and so the argument was waived on direct appeal. *Palmer v. State of Maryland,* Md. App. at 21-24 (Sept. Term 2009). The post-conviction court, however, found trial counsel's failure to object harmless, reasoning that because Palmer had not been convicted on an aiding and abetting theory, he could demonstrate no prejudice. ECF No. 17-10 at 10. This Court finds no basis to view this claim any differently than the post-conviction court. Accordingly, habeas corpus relief is denied on this ground.

### 6. **Failure to Move for New Trial**

Palmer next asserts that trial counsel failed to pursue immediate relief after having learned from a juror that the verdict "was not so much about 'fact of law' but 'what would be expedient to complete the process,'" ECF No. 1 at 6; ECF No. 17-10 at 11.  Had trial counsel done so, argues Palmer, the trial court would have been "compelled to strike his conviction and grant him a new trial."  ECF No. 17-10 at 11.

Notably, trial counsel brought this information to the court's attention and asked for a new trial as a result.  ECF No. 17-10 at 11.  The trial court rejected the request, concluding that the conviction had been the "product of a rational jury."  *Id.* (quoting trial transcript at sentencing).  The post-conviction court found, correctly, that trial counsel had raised the issue, and that no evidence suggests that failure to subpoena the juror for a hearing would have affected the outcome of the trial.  ECF No. 17-10 at 11.  Again, the factual finding that the conviction had been the product of a rational jury cannot be disturbed without evidence that such finding itself was irrational.  Given the strength of the evidence at trial, and no other indicia that the deliberation process was at all irregular, this Court cannot upset this determination.

### 7. **Failure to Request Holding Modification Motion in Abeyance**

Palmer contends that counsel's failure to hold the reconsideration of sentence in abeyance amounts to ineffective assistance.  The post-conviction court, however, granted relief on this theory.  ECF No. 17-10 at 11.  This Court finds no further relief warranted on this ground.

### 8. **Cumulative Impact of Errors**

Palmer lastly asserts that even if none of the above-claimed errors individually amount to ineffective assistance, the cumulative effect rendered his trial unfair and entitles him to relief.  ECF 1 at 15.  At the post-conviction stage, Palmer ticked through that a "litany of errors" rendered the

trial unfair.  ECF No. 17-10 at 15. The Court concluded that "most, if not all, amount to bald assertions of fact or law" and "none amount to error on trial counsel's behalf." *Id.*[4]

Here, it is not altogether clear which "cumulative error" Palmer is asserting.  Certainly, those raised before the post-conviction court are no more sound or supported before this Court. And the errors reviewed in this Petition are no different.  ECF No. 1 at 15; ECF No. 9-1 at 14 And again, Palmer provides no grounds, legal or otherwise, to support that the errors taken cumulatively warrant habeas relief.  ECF No. 1 at 15-21.  In the Fourth Circuit, courts generally do not recognize cumulative error arguments because "legitimate cumulative-error analysis evaluates only the effect of matters actually determined to be constitutional error, not the cumulative effect of all of counsel's actions deemed deficient." *Fisher v. Angelone*, 163 F.3d 835, 853 n.9 (4th Cir. 1998); *see also Arnold v. Evatt*, 113 F.3d 1352, 1364 (4th Cir. 1997); *Higgs v. United States*, 711 F. Supp. 2d 479, 552 (D. Md. 2010).  Palmer has not presented this Court with any argument to the contrary.

In sum, having examined the state court decisions and trial record, this Court concludes that Palmer is not entitled to federal habeas relief. *See* 28 U.S.C. § 2254(d).  The state court's rejection of Palmer's asserted errors was neither contrary to clearly established federal law or involved an unreasonable application of federal law pursuant to 28 U.S.C. § 2254(d).  Further, in considering Palmer's individual ineffective assistance claims, the Court finds no basis to disturb the state post-conviction court's findings as contrary to clearly established federal law or based on unreasonable application of federal law.  *Id.*  Thus, habeas relief must be denied.

---

[4] Although the Maryland Court of Appeals has held that several errors taken together may constitute an independent reason for finding ineffective assistance, *Bowers v. State*, 320 Md. 416, 437 (1990), that is not the case here.  The post-conviction court reasoned that because "none of petitioner's allegations amount to error on trial counsel's behalf . . . this is not a case where the cumulative effect of numerous interrelated errors in aggregate amount to inadequate representation."  ECF No. 17-10 at 15.

**IV.      Certificate of Appealability**

Rule 11(a) of the Rules Governing Section 2254 Cases provides that "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability, a habeas petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Buck v. Davis,* 137 S. Ct. 759, 773 (2017); *Slack v. McDaniel,* 529 U.S. 473, 483–84 (2000). When a district court rejects constitutional claims on the merits, a petitioner satisfies this standard by demonstrating that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck*, 137 S. Ct. at 773 (citation omitted).

Palmer has not made the requisite showing. Accordingly, the Court declines to issue a certificate of appealability. Palmer may request that the United States Court of Appeals for the Court issue such a certificate. *See Lyons v. Lee,* 316 F.3d 528, 532 (4th Cir. 2003).

For the above reasons, the Petition is denied. A separate Order follows.

|  |  |
|---|---|
| _____February 3, 2021_____ | _____/S/_____ |
| Date | Paula Xinis |
|  | United States District Court |

14